THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **EMILY GENTEEL SMITH**, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **NANCY A. BERRYHILL,** ) <br> **Commissioner, SSA,** ) <br> ) <br> **Defendant.** ) | **Civil Action Number** <br> **4:18-cv-00914-AKK** |

## **MEMORANDUM OPINION**

Emily Smith brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court affirms the decision.

### **I.  Procedural History**

Smith worked previously as a nurse until she stopped working in 2014 due to her alleged disability. R. 156-159, 166. Smith filed her application for disability benefits thereafter asserting that she suffered from a disability beginning on August 14, 2014 due to fibromyalgia, gastro esophageal reflux disease (GERD), hypertension, restless leg syndrome, anxiety, depression with borderline features,

and attention deficit hyperactivity disorder (ADHD). R. 18, 49, 177. After the SSA denied her application, Smith requested a formal hearing before an ALJ. R. 94-99. Ultimately, the ALJ entered a decision against Smith. R. 13-27. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. R. 1-3. Having exhausted her administrative remedies, Smith filed this action pursuant to 42 U.S.C. § 405(g). Doc. 9.

## II. Standard of Review

Federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). If supported by substantial evidence,

the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *Id.*

In reviewing findings of fact, credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In contrast to the opinion of a treating physician, "the opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

In contrast to factual findings, the court reviews the SSA's conclusions of law *de novo*, *see Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the

3

ALJ's choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.* And, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added).

### III. Statutory and Regulatory Framework

An individual applying for DIB bears the burden of proving that she is disabled. *Moore*, 405 F.3d at 1211. To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is doing substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV. The ALJ's Decision

The ALJ applied the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, and found that step one was satisfied because Smith was not engaged in substantial gainful activity since her alleged onset date. R. 18. At step two, the ALJ found that Smith has "severe impairments" caused by fibromyalgia, GERD, hypertension, restless leg syndrome, anxiety, depression with borderline features, and ADHD. *Id.* (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ concluded that Smith does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpt. P, App. 1, §§ 4.00, 5.02, 12.04, and 12.06 for cardiovascular, digestive, depressive, and anxiety disorders and in SSR 12-2p guidelines for fibromyalgia. R. 19-20. Next, the ALJ determined Smith's residual functional capacity ("RFC") and

found that Smith can "perform light work" with limitations on reaching overhead, climbing, balancing, crawling, social interactions, exposure to hazardous machinery, working at unprotected heights, and changes in the workplace setting. R. 21-26. Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Smith could not return to her past relevant work as a licensed practical nurse. R. 25. The ALJ then proceeded to step five, where based on Smith's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that Smith is capable of performing "jobs that exist in significant numbers in the national economy," including work as an inspector, bench assembler, hospital cleaner, or a price marker. R. 26, 44-46. Therefore, the ALJ concluded that Smith was not disabled from the alleged onset date through the date of her decision. R. 27.

**V. Analysis**

Smith argues the ALJ failed to (1) give Smith substantial credibility as a result of her "excellent work history," (2) consider Smith's complaints about the side effects of her pain medication; and (3) properly analyze Smith's symptoms of fibromyalgia based on her complaints of limitations and the absence of objective findings. Doc. 9 at 13-30. For the reasons discussed below, the ALJ's decision is due to be affirmed.

### A. Whether the ALJ Properly Considered Smith's Work History

Relying on case citations and without providing examples from the record, Smith argues that the ALJ failed to give proper weight to Smith's "excellent work history" in the credibility finding. Doc. 9 at 13-15. However, Smith "does not attack the ALJ's credibility determination directly, but instead argues that because the ALJ did not make an explicit finding regarding [her] excellent work history, the rest of his credibility determination is invalid." *Roane v. Berryhill*, 2017 WL 3613989, at *6 (S.D. Ga. July 31, 2017), *report and recommendation adopted,* 2017 WL 3613040 (S.D. Ga. Aug. 22, 2017). To support her contention, Smith cites to cases from other circuits which have found that a claimant's prior "good work record" justifies an inference of substantial credibility. *See, e.g., Allen v. Califano,* 613 F.2d 139, 147 (6th Cir. 1980). But, "the Eleventh Circuit has not had occasion to rule on the issue" of whether an ALJ's failure to consider a claimant's "lengthy and consistent work record" in evaluating a claimant's credibility is erroneous. *Mahon v. Comm'r of Soc. Sec.*, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017).

Moreover, the circuit has upheld an ALJ's credibility determination that is supported by substantial evidence even when a plaintiff has a good work history. *See Edwards,* 937 F.2d at 584. In other words, excellent work history alone may be insufficient to enhance a claimant's credibility. Therefore, because the ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as

the ALJ's decision . . . enable[s] [the reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole," *Dyer,* 395 F.3d at 1211 (alterations and quotations omitted), and because an excellent work record alone "does not necessitate remand in this case where the ALJ based her credibility finding on a careful analysis of the medical record and Plaintiff has failed to show the credibility finding was otherwise erroneous," *Evans-Sweny v. Comm'r of Soc. Sec.,* 2019 WL 949302, at *7 (M.D. Fla. Feb. 27, 2019), the record does not support a finding that the ALJ erred in failing to reference Smith's prior work ethic.

### B. Whether the ALJ Properly Considered Smith's Subjective Complaints about Medication Side Effects

Smith also maintains that the ALJ failed to adequately elicit and consider testimony about Smith's ability to work in light of her medications' side effects, which she testified includes falling and stumbling.[1] Doc. 9 at 15 (citing R. 41). Smith is generally correct that an ALJ may consider subjective symptoms, which include the effectiveness and side effects of medications. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). However, "[a]s an initial matter, the heightened duty to develop the record that [Smith] cites from *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), applies when claimants are not represented; in

---

[1] Although Smith also testified about experiencing hallucinations as a side effect—"see[ing] people out of the corner of [her] eye [and] . . . hear[ng] people knocking on the door. . .," R. 41, Smith fails to raise this contention on appeal, and the court declines to consider it.

8

this case [Smith] was represented at the administrative hearing by counsel who had the opportunity to elicit any relevant testimony about [her] limitations." *Burgin v. Comm'r of Soc. Sec.*, 2010 WL 2510650, at *9 (M.D. Fla. June 21, 2010), *aff'd*, 420 F. App'x 901 (11th Cir. 2011). Indeed, here, counsel questioned Smith about her medication side effects: "I've fallen several times and the doctor said it was due to one medication, but I can't remember which one. Really off balance . . ." R. 41.

Ultimately, "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled," and Smith must still "introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker v. Comm'r of Soc. Sec.,* 404 F. App'x 362, 366 (11th Cir. 2010). Relevant here, the medical records fail to indicate that Smith regularly complained of side effects that are severe enough to be disabling alone or in combination with her other impairments. Indeed, the ALJ pointed to specific entries in the medical record that undermine Smith's contention, noting that Smith was "consistently treated conservatively with a variety of medications for mental health impairments throughout the relevant period." R. 24. Although Smith requested a change in medications due to side effects, the ALJ noted that Smith's record indicated progress after the change, including reports of Smith appearing "oriented, with logical thinking, undisturbed memory" and having an "appropriate affect, cooperative attitude, and good attention." *Id.* (citing R. 345-360). Moreover,

the ALJ noted that Smith reported at a February 2017 appointment that "her current medication combo seems to be helping." *Id.* (citing R. 376).

Lastly, absent from the medical record is the extent to which Smith's symptoms "limit [her] capacity to work." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)). An ALJ has no duty to further investigate side effects of the medications of a claimant like Smith, who is represented by counsel and did not allege that side effects contributed to her disability specifically and instead mentioned only her general side effects. *See, e.g., Cherry v. Heckler,* 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985). Accordingly, the court finds no error in the ALJ's decision finding that Smith's testimony about her medication side effects was unsupported by the medical record indicating improvements with new medication combinations.

### C. Whether the ALJ Properly Analyzed Smith's Fibromyalgia Claim under SSR 12-2p

Smith also contends that the ALJ did not properly consider Smith's complaints of fibromyalgia. However, Smith offers no details on how the ALJ erred and instead submits ten pages worth of quotes from cases remanding disability

claims based on fibromyalgia.² Doc. 9 at 18-30. In the absence of any specific references to the record, or arguments about the cases quoted, it appears Smith is contending that the ALJ failed to examine Smith's longitudinal history, improperly emphasized the lack of objective testing, and overlooked Smith's subjective complaints. The court reviews these contentions below.

*1. Objective Evidence*

Fibromyalgia is a "rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Davis v. Astrue*, 287 F. App'x 748, 762 (11th Cir. 2008) (quoting *Benecke v. Barnhart,* 379 F.3d 587, 589–90 (9th Cir. 2004)). Because those suffering from fibromyalgia often have "muscle strength, sensory functions, and reflexes [that] are normal," *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001), a claimant with the ailment "often lacks medical or

---

² Other judges, when presented with such briefs, have "paus[ed] to note the irony in claimant's assertion" by "criticiz[ing] the ALJ's decision for being conclusory and devoid of rationale and citation to supporting evidence, but her own briefs suffer from the exact same shortcomings." *Howard v. Astrue,* No. CV-12-S-889-M, 2013 WL 245617, at *7, n.19 (N.D. Ala. Jan. 23, 2013)*, aff'd sub nom. Howard v. Soc. Sec. Admin., Com'r*, 566 F. App'x 784 (11th Cir. 2014). In fact, Smith's attorney has also been cautioned against filing briefs that make "conclusory statements and quote case law without connecting any of her arguments or citations to the record." *Id.*

laboratory signs, and is generally diagnosed mostly on an individual's described symptoms." *Moore*, 405 F.3d at 1211.

In 2012, the SSA issued a ruling recognizing fibromyalgia as a valid "basis for a finding of disability." SSR 12-2p, 2012 WL 3017612 (July 25, 2012). The ruling "provides guidance on the evidentiary showing to establish that a claimant has a medically determinable impairment ("MDI") of fibromyalgia and whether that impairment qualifies as disabling under the Social Security Act. Under this ruling, fibromyalgia is an MDI 'when it is established by appropriate medical evidence.'" *Peterson v. Berryhill*, No. 1:15-CV-751-GMB, 2017 WL 1015316, at *3 (M.D. Ala. Mar. 15, 2017). And "[i]f a claimant is found to have an MDI of fibromyalgia, the normal five-step sequential evaluation process is used to determine whether the claimant is disabled." *Id.* However, "[a]s with any claim for benefits . . . [the ALJ] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p.

Indeed, the record indicates that Smith was diagnosed with fibromyalgia. *See* R. 312 (noting that Smith "is under the care of Dr. Smith for fibromyalgia"); R. 300 (Dr. Gwen Williams' entry that that she "thinks it's most likely that the patient has fibromyalgia"); R. 359 (Dr. Adam Alterman lists fibromyalgia in Smith's medical history). However, "[t]he mere presence of a disease is not in of itself disabling; it

must be shown that the disease caused functional limitations." *Foster v. Richardson*, 335 F. Supp. 30, 32 (N.D. Ga. 1971). Contrary to Smith's unsupported contention, and consistent with the SSR 12-2p guidelines, the ALJ actually examined the "longitudinal record . . . because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" *See* R.19. More specifically, the ALJ pointed out that in August 2014 Dr. Joshua Cockrell noted that Smith denied back pain, muscle weakness, cramps, tingling, and numbness. R. 23 (citing R. 254). A year later, during a psychological evaluation, Dr. Sharon Waltz recorded an entry that Smith had "no obvious physical problems" and that Smith did not report fibromyalgia with restless leg syndrome as part of her medical history. R. 24 (citing R. 369). Two months later, Dr. William MacLean listed during a cardiovascular appointment that Smith had no musculoskeletal complaints. *Id.* (citing R. 317-319). Notably, the ALJ remarked that four months after Dr. MacLean's appointment, Smith visited OrthoSports and complained about experiencing "joint pain in both knees, her left shoulder, and both hips [and having] . . . these symptoms for several years," but that a physical examination revealed normal musculoskeletal functioning and full muscle strength—Smith had "no effusions of the knees, elbows, or ankles, . . . [and] muscle strength [rated five out of five]." *Id.* (citing R. 299-302 Dr. Gwen Williams' OrthoSports office reports). Finally, six months after the OrthoSports visit, Dr. Alterman noted that despite joint pain, Smith denied gait abnormality and

13

the physical exam indicated no clubbing, cyanosis, or edema of the extremities as well as normal motor strength and normal reflexes. *Id*. (citing R. 356-358). Put simply, based on this entire record, the ALJ properly analyzed Smith's fibromyalgia diagnosis in light of the findings in the medical record.

### 2. *Subjective Complaints*

Moreover, the ALJ did not solely rely on the lack of objective findings to deny Smith's disability based on fibromyalgia. Despite Smith's complaint of joint pain spanning several years, the ALJ noted that Smith maintained a full-time job and regularly exercised, gardened, and worked in the yard. R. 23. In making a credibility determination, the ALJ highlighted the inconsistencies in Smith's testimony and concluded that such "reports [of daily activities] are inconsistent with someone who simultaneous alleges constant disabling pain." *Id.* Contrary to Smith's contention that the Eleventh Circuit's decision in *Moore* that "fibromyalgia is a subjective impairment" means that the ALJ must accept Smith subjective complaints as sufficient evidence of a disabling impairment, *see* doc. 11 at 6, the court also "recognize[d] that credibility determinations are the province of the ALJ" and that an ALJ may "rely on the inconsistencies between [the claimant's] descriptions of her diverse daily activities and her claims of infirmity." *Moore,* 405 F.3d at 1212. When, as here, the "ALJ provide[s] a detailed factual basis for [her] credibility determination, which did not turn on the lack of objective evidence documenting

fibromyalgia" and includes references to the plaintiff's ability "to drive, provide childcare, bathe and care for herself, exercise, and perform housework," there is "no reversible error." *Id.*

### 3. *Residual Functional Capacity*

After determining that Smith failed to offer "medical evidence that the effects of [Smith's] fibromyalgia medically equal any other listing . . . when considered singly and in combination with [Smith's] additional impairments," the ALJ assessed Smith's RFC and determined that she can perform light work with limitations. R. 21. The ALJ noted that although Smith "alleged that she suffers from knee, hip, neck, ankle, and other joint pain with some relief from medication," Smith reported no difficulty with personal care and noted that she can perform household chores, including preparing frozen meals, laundry, washing dishes, vacuuming, and sweeping.[3] *Id.* at 21-22 (citing R. 198 Smith's self-report of daily activities included "cleaning, laundry, mowing, wash[ing] dishes, vaccum[ing], and sweep[ing]" and shopping for food, clothes, reading books, watching television, and talking on the phone). In making an RFC determination, the ALJ accounted for Smith's alleged work limitations caused by fibromyalgia and concluded that Smith can "perform

---

[3] Pursuant to SSR 12-2p, "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms."

15

light work" with limits on reaching, climbing, balancing, crawling, social interactions, exposure to hazardous machinery, working at unprotected heights, and changes in the workplace setting. R. 21-26, 44-46. The record supports the ALJ's RFC finding.

## VI. Conclusion

It is evident from the record that the ALJ properly cited to substantial evidence to discredit Smith's subjective complaints about the severity of her fibromyalgia and her other symptoms. The court concludes therefore that the ALJ's determination is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching her decision. Accordingly, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 23rd day of July, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE